THE STATE OF IOWA, EX REL., B. F. CARROLL, Auditor of STATE, v. CORNING STATE SAVINGS BANK, C. F. ANDREWS, Receiver, Appellee, and THE IOWA NATIONAL BANK, THE DES MOINES NATIONAL BANK, and W. O. CURTISS, Appellants.

**Insolvent banks:** PREFERRED CREDITORS: DISTRIBUTION OF ASSETS. On the insolvency of a bank and appointment of a receiver under Code, section 1877, depositors are preferred creditors and entitled to be first paid in full, after deducting costs and expenses, from the general assets of the bank, and in case the assets of the bank are insufficient for that purpose they are also entitled to ratably share with all creditors in the distribution of proceeds arising from a statutory assessment of the stockholders.

*Appeal from Adams District Court* — HON. W. E. MILLER, Judge.

WEDNESDAY, APRIL 5, 1905.

THE opinion states the case.—*Affirmed.*

*C. W. Johnston,* for appellants Iowa Nat. Bank and W. O. Curtiss.

*C. L. Powell,* for appellant Des Moines Nat. Bank.

*Maxwell & Maxwell,* for appellee C. F. Andrews, receiver.

WEAVER, J.—The Corning State Bank became insolvent, and was placed in the hands of a receiver for a settlement of its business. Having reduced the assets of the bank in part to money, the receiver applied to the district court for instructions as to his powers and duties in making a dividend or partial payment to the creditors. In this application the receiver showed to the court that from the general assets of the bank there would be realized not to exceed about forty to fifty per cent. of the indebtedness owing to depositors, or twenty to thirty per cent. of the total indebtedness to creditors of all classes. The estimate thus made does not include the amount likely to be realized from the statutory assessment upon stockholders. The creditors presenting claims for allowance are classified by the receiver as follows:

(a) Claims of various persons who had current checking and deposit accounts with said bank. (b) Persons who were depositors in said bank in what is known as " savings accounts." (c) Persons who were depositors in said bank upon certificates of deposit. (d) Persons who have become creditors of said bank by making loans to the same, many of which loans were evidenced either by promissory notes of said bank, or certificates of deposit issued to evidence such loan. (e) Persons to whom said bank had discounted commercial paper, and become liable for the same, either by guaranty or other form of indorsement. (f) Persons to whom said bank became liable by the issuance to them of its checks or sight drafts on its correspondent banks, which checks or sight drafts were protested and never paid.

Upon the showing thus made, the receiver states that he finds himself in doubt as to the construction of the statute governing the distribution of the assets of the bank to its creditors, and asks for instructions as follows:

First. Whether or not the first three classes hereinbefore named, and which are generally designated as "depositors," are entitled to receive, as preferred claimants, all of the proceeds of the assets of said bank which were on hand at the time your petitioner was appointed, before any portion of the same can be distributed or paid to the claimants designated as "general creditors," or whether all of the creditors, both depositors and general creditors, are entitled to participate equally in said assets. Second. If the court should hold that the proceeds of all of said assets are to be paid to the creditors designated as "depositors," in preference to the general creditors, then shall the funds realized from the assessment of stockholders be distributed equally to all of the creditors, both depositors and general creditors, equally, computing the claims of depositors on the basis of the amount originally allowed, or should the same be computed upon the basis of the remainder of their respective claims which is unpaid after the proceeds of the original assets are credited? And your petitioner further prays the court for such other order and direction in and about the classification and payment of claims as the court may think necessary and proper in the premises.

On the hearing of this application, the Iowa National Bank, W. O. Curtiss, and the Des Moines National Bank appeared, presenting claims on alleged rediscounts, overdrafts, certificates of deposit, and protested checks in varying sums, and each of said claimants objected to any order giving preference to any one class of creditors over others. The court overruled the objections by the creditors named, and decided that under the statute the depositors in the insolvent bank are preferred creditors, who, after payment of costs and expenses, are entitled to be first paid in full from the assets in the hands of the receiver, exclusive of the sum or amount realized from the statutory assessment upon the stockholders, and that the proceeds of such assessment be ratably

distributed to all creditors, including depositors. In its ruling the court defined the terms " depositors " and " general creditors " as follows:

The following claims which have been filed and allowed herein shall be classed as depositors, to-wit: (a) All the claims of persons whose claims are based upon the balance due them, as depositors, in their respective general checking deposit accounts with said bank. (b) All persons whose claims are based upon sums due them, as depositors, upon certificates of deposit issued by said bank, as such, for deposits of money in the usual course of business. (c) All persons whose claims have been established and allowed by this court, and expressly designated as " depositors " or " general depositors " in the judgments and orders heretofore entered in this cause. And the court further finds that the claims of all other creditors which have been allowed and established against said bank, which are not included in the above, are general creditors.

From the ruling and judgment as above stated the creditors hereinbefore named have appealed.

I.    The record presents but one question for our consideration: Does the statute require that depositors be first paid in full before other creditors are entitled to share in the general assets of the insolvent bank? The statute provides that whenever the Auditor of State becomes satisfied of the insolvency of a bank, or believes that the interests of creditors require that it be closed, he may by proper proceedings in the district court procure the appointment of a " receiver for such bank and its affairs shall be wound up under the direction of the court, and the assets thereof ratably distributed among the creditors thereof giving preference in payment to depositors." Code, section 1877. In case a deficiency still remains, a ratable assessment may be made upon the stockholders not to exceed an amount equal to their respective holdings of shares, and the sum so realized shall be distributed equally among all the creditors in proportion to the several sums due them. Code, sections 1878–1883.

We regard it as very clear that the statute will admit of no other construction than the one placed upon it by the trial court. Counsel for appellant have with much thoroughness digested the history of bank legislation in this State and the development of the statutory provisions now in force, and therefrom draw the conclusion that the controlling idea of the Legislature in the chapter now under discussion was to secure ratable equality to all creditors in the distribution of the assets of an insolvent bank. It is frankly conceded that from the standpoint of counsel the provision for " giving preference in payment to depositors " is not easy of interpretation, and to avoid its apparent effect two theories are presented.

It is. said that the clause in question is so repugnant to other provisions, and so out of harmony with the general spirit and purpose of the statute, we are at liberty to disregard it as surplusage and void; or we may allow it force and effect for giving depositors preference in time of payment, while preserving ratable equality among all creditors in the final settlement. For the court to adopt the first suggestion and read out of the statute the provision giving preference to depositors, or deprive it of any force or meaning in directing the settlement of the affairs of an insolvent bank, would be radical judicial legislation and an unwarranted assumption of power. That the Legislature has power to provide for preferences in the settlement of insolvent estates has been too long and too well settled to admit of question or to call for citation of authorities. The alternative suggestion that the preference given by the statute has reference only to the *time* of payment is ingenious, but not convincing. Such a preference would be an idle ceremony. Before any dividend or distribution can be made, the receiver must have money on hand applicable to that purpose, and, if ratable equality to all creditors is the rule, preference in time of payment would affect nothing more than the order in which the creditors may approach the receiver's desk and receive their

respective dividends.   Counsel's suggestion that the court
may make payments to depositors from time to time and
thereafter equalize the distribution with other creditors upon
the final settlement, is impracticable.   No court or receiver
who is bound by law to make an equal and ratable distribu-
tion to all creditors can safely or properly apply the funds
on hand to the payment of a part of the creditors, and de-
pend on the future and its developments for other funds with
which to satisfy the lawful claims of others who are entitled
to equal consideration.   Nor is there anything in the lan-
guage of the statute itself which requires us to give it such
a forced and unnatural interpretation.

   It may be conceded that, standing alone, the provision
for ratable distribution among the creditors of the bank
would require that all creditors be placed upon an equality,
each receiving as much as the other, in proportion to the
amount of his approved claim.   But a " ratable distribution
of the assets among creditors, giving preference in payment
to depositors," is an altogether different proposition.   Under
the unqualified provision first mentioned, all creditors are
placed in a single class; but under the statute as it stands they
are separated into two classes, one of which is given prefer-
ence over the other in the distribution of the assets.   The
distribution is still " ratable," although the classes may par-
ticipate only in a stated order of priority.   A ratable dis-
tribution is one which is made at proportionate rates (see
" ratable," Webster's International Dictionary), and, if each
creditor received his due proportion of the funds applicable
to the claims of his class, the letter and spirit of the statute
are observed.   In other words, if the creditors of a bank
are by law separated into classes, a proportionate distribu-
tion made to the members of the several classes in the order
of their established priority until the funds applicable thereto
are exhausted, or all claims are fully met, is, in a just and
appropriate sense, " ratable," and such, we think, is the

manifest legislative meaning and intent in the statute under consideration.

Nor can we admit the justice of counsel's contention that the preference here recognized is opposed to the principles of justice or of sound public policy. Banks serve as a means by which the comparatively small individual earnings and savings of the people generally are drawn and massed together in large aggregate sums or amounts which we call " deposits." Upon these deposits not only the banks themselves, but business enterprises of every kind, are largely dependent for success. Anything which tends to strengthen public confidence in the banks and assures the depositors of the safety of their money is a matter of general public benefit, while anything which engenders distrust or alarm and causes a withholding or withdrawal of deposits is a public injury. It is therefore entirely fitting that in authorizing the organization of banks the law should at once provide for the protection of depositors, and for the protection of public interests, by giving preference to the claims of those without whose co-operation modern banking would be impossible.

We have not thought it necessary to go into any discussion of the authorities. The question is one of the construction of a statute of our own State, the terms of which are not in the least uncertain or ambiguous. We are satisfied that the ruling appealed from gives force and validity to the act in accordance with the legislative intent.

No objection is made by either party to the order of the trial court for distribution of the moneys derived from assessments made upon stockholders, and we may therefore assume its correctness. Counsel have to some extent argued the question whether all holders of certificates of deposit are entitled to be classified as " depositors " within the meaning of the provision giving preference to such creditors. The trial court does not seem to have made any ruling in this

respect, and it would be improper for us to attempt to pass upon it.

Finding no error in the record, the judgment appealed from is *affirmed*.